IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN L. ZIMMERS, *et al.*, | : | |
| | : | Case No. 2:15-CV-2398 |
| Plaintiffs, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Deavers |
| EATON CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This patent-infringement action is before the Court on Cross-Motions for Judgment on the Pleadings by Defendants Cooper Notification, Inc. ("Cooper") and Eaton Corporation ("Eaton") and Plaintiffs Steven L. Zimmers and Daniel W. Davis. (Docs. 14, 25.) Plaintiffs also ask the Court to strike Defendants' unclean-hands and equitable-estoppel defenses. (Doc. 20.) The Court **GRANTS** Defendants' Motion for Judgment on the Pleadings, **DENIES** Plaintiffs' Motion for Judgment on the Pleadings, and **DENIES AS MOOT** Plaintiffs' Motion to Strike.

### I. BACKGROUND

#### A. Factual Background

*1. The Patents*

Plaintiffs Zimmers and Davis are the sole owners of U.S. Patent No. 9,015,256 (the "'256 patent") and U.S. Patent No. RE44,535 (the "'535 patent"). (Compl., Doc. 1 at ¶ 7.) Additionally, Plaintiffs are the named inventors of U.S. Patent No. 6,816,878 (the "'878 patent"), which is not a subject of this litigation. (*Id.* at ¶ 8.) The '256 and '535 patents were filed after the predecessor '878 patent but all three hold the same priority date of February 11, 2000. (*Id.* at ¶¶ 7-8.) The patented systems "relate to providing emergency notification to multiple persons

1

and/or geographic regions needed to be notified of pending emergencies or disasters such as a terrorist attack or severe weather incident." (*Id.* at ¶ 8.) The invention is "primarily directed to delivery of warnings via telephone," but also uses "other communication devices . . . such as computer networks, pagers, or other devices." ('535 patent, Doc. 1-2 at 4:41-46.) The alert notification system utilizes computers connected via a network. (*Id.* at 6:41-43.) The computers include a database server that stores information and is used to assess alerts and deliver alert notifications. (*Id.* at 6:44-48.) The computers evaluate notifications delivered by various organizations via a variety of communication mechanisms and interact with the database server to evaluate alert conditions and determine appropriate recipients of the alerts. (*Id.* at 6:49-58; 7:1-5.) The alert notifications may be delivered via telephone, facsimile, electronic mail, or other electronic communications. (*Id.* at 11:26-32.)

Defendant Cooper is the owner of U.S. Patent No. 7,409,428 (the "'428 patent"), which was filed on April 22, 2004. (Doc. 1 at ¶ 12.) The '428 patent is directed to "systems and methods for messaging to multiple gateways." (*Id.*) In 2009, Cooper filed a claim for patent infringement against Twitter, Inc. and other defendants in the United States District Court for the District of Delaware. *See Cooper Notification, Inc. v. Twitter, Inc.*, No. 1:09-cv-00865 (D. Del. Nov. 13, 2009). (*Id.* at ¶ 13.) Twitter requested that the United States Patent and Trademark Office ("USPTO") conduct an *inter partes* reexamination of all the claims of Cooper's '428 patent. (*Id.* at ¶ 14.) The USPTO conducted the reexamination and ultimately rejected several claims from the '428 patent, which the USPTO Patent Trial and Appeal Board ("PTAB") affirmed on January 13, 2014. (*Id.* at ¶¶ 15, 17.) Cooper notified the district court in the *Twitter* litigation in November 2011 that it was no longer asserting certain claims (claims 1-11) of the '428 patent against the defendants but would proceed on the remaining claims. (*Id.* at ¶ 16.) In

May of 2012, that court granted Twitter's motion for summary judgment against Cooper on the remaining infringement claims under the '428 patent. (*Id.*)

On January 14, 2014, Plaintiffs Davis and Zimmers amended their pending patent application (which later issued as the '256 patent) to note that claims 74, 75, and 76 of the application had been copied from claims 1, 5, and 9 of the '428 patent, which had been rejected during the reexamination process because they were anticipated by the parent '878 patent. (*Id.* at ¶ 19.) Sometime in 2014, Eaton and Cooper also filed U.S. Patent No. 14/458,100 (the "'100 patent"), the first claim of which was similar to the canceled claim in Cooper's '428 patent. (*Id.* at ¶ 20.) Zimmers and Davis contacted Eaton and Cooper and informed them that Plaintiffs' pending application was similar to the claims that were rejected in the reexamination of the '428 patent and that Plaintiffs' application had an earlier priority date than Defendants' '100 patent. (*Id.* at ¶ 21.)

On December 22, 2014, the USPTO rejected claims 74-77 in the '256 patent under 35 U.S.C. § 101 because those claims were directed to an abstract idea. (Doc. 34-3 at 4-5.) Plaintiffs submitted clarifying amendments to those claims, and the USPTO approved the '256 patent on April 21, 2015. (*See* Doc. 1-1.) The '535 patent had been approved earlier, on October 8, 2013. (*See* Doc. 1-2.)

Plaintiffs now contend that Defendants have manufactured, distributed, and/or sold alert notification systems that infringe one or more claims of Plaintiffs' '256 and '535 patents. (Doc. 1 at ¶ 24.)

2. *The Claims*

Claim 1 of the '535 patent reads as follows:

1. A system for providing a message to a plurality of locations on a geographic basis, comprising:

3

>   a database storing a plurality of communications identifiers registered for persons using the system, the communications identifiers relating to modes of contact selected from the group consisting of:
>   i.   voice or facsimile communication via a fixed or mobile telephone,
>   ii.  computer network messaging via electronic mail or Internet protocol messaging, and
>   iii. voice or text messaging via a pager, personal digital assistant, laptop or palmtop computer,
>   wherein at least one person is registered to communications identifiers representing two different modes of contact,
>   a computer system responding to a command identifying a message to be provided to persons, by retrieving from said database, communications identifiers or said persons, establishing a communications connection using each retrieved communication identifier and delivering said message via said communications connection, wherein at least one person is contacted regarding said message via multiple communication identifiers.

('535 Patent, Doc. 1-2 at 39.) Additionally, Plaintiffs assert several additional claims in the '535 patent detailing the types of announcements or alerts that the system can deliver, including: a message sent to locations on a geographic basis (claim 74); announcements sent to certain persons (claims 23, 96); and announcements sent to a group of persons by associating communications identifiers with data to determine which interested persons the communication should be sent to (claims 45, 118). The '535 claims also describe additional elements that facilitate the message delivery system, including: communications identifiers associated with geographic locations (claims 4, 77); a threat identification system that evaluates threats and identifies geographic areas to receive warnings (claims 14, 36, 58, 87, 109, and 131); and the use of census information for persons receiving messages to allow for customization of the messages (claims 25, 47, 98, and 120).

The claims of the '256 patent recite sources and destination message types that the system can support (claims 6-16); the manner in which the alert originator supplies the first message by prompting for contents, recipients, and time of delivery (claims 26-28); and the types of message targets the system reaches, including land or cellular telephones, email addresses, and

4

uniform resource locators ("URLs") (claims 48, 50-51). The claims also cite provisions for user preferences regarding receipt of messages, including acceptable hours and location limitations (claims 53-55). They describe a registration system that may be used to provide subscriber information using an interactive voice response system or web based forms (claims 65-69). Finally, the claims describe the use of "prioritization information" that is transferred to a gateway and may be based on user identification, resource limits, criteria of the public telecommunication system, computational resources, line capacity, or the registration system (claims 85-92).

### B. Procedural History

On June 11, 2015, Plaintiffs filed a complaint for patent infringement against Defendants. (Doc. 1.) On August 10, 2015, Defendants filed an answer asserting defenses of failure to state a claim, patent non-infringement, patent invalidity, unclean hands, equitable estoppel, and no entitlement to injunctive relief. (Doc. 4 at 6-7.) They also filed two counterclaims, seeking declaration of non-infringement and invalidity of the patents in question, and Plaintiffs filed a reply to the counterclaims. (*Id.* at 9-10; Doc. 8.) The parties subsequently filed cross-motions for judgment on the pleadings. (Docs. 14, 25.) Defendants assert that the patents are invalid as patent-ineligible, and Plaintiffs seek judgment that the claims are valid under 35 U.S.C. § 101. Plaintiffs also filed a motion to strike the unclean hands and equitable estoppel affirmative defenses from Defendants' answer. (Doc. 20.) The Magistrate Judge granted Defendants' motion to stay discovery until after the resolution of the cross-motions for judgment on the pleadings because the cross-motions present threshold legal questions and a short stay would not unduly prejudice Plaintiffs. (Doc. 37 at 4.)

## II. STANDARD OF REVIEW

When a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is based on the argument that the complaint fails to state a claim upon which relief may be granted, the Court employs the same legal standard as a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) ("Where the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, we must apply the standard for a Rule 12(b)(6) motion in reviewing the district court's decision."). The Court will grant the Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

When a party moves for judgment on the pleadings, the Court must construe "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581. The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to allegations in the complaint, the Court may take into account "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," in this case the patent applications at issue. *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (citation omitted).

## III. DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Legal Standard for Patent Eligibility

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." Three categories of subject matter are not patent-eligible: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). If a patent involves one of these categories, however, it remains eligible for patent protection if it shows an "application" of such a concept "to a new and useful end." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). In *Alice Corp. Pty. v. CLS Bank International*, 134 S. Ct. 2347, 2355 (2014), the Supreme Court described the two-part test courts should employ to determine patent eligibility. First, this Court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If so, the Court considers "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298, 1297 (2012)). Put differently, the second step requires the Court to determine if the patent application presents an "inventive concept, sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the" abstract idea itself. *Mayo*, 132 S. Ct. at 1294 (internal quotation marks and citation omitted). The "concern that drives this exclusionary principle [i]s one of pre-emption." *Alice*, 134 S. Ct. at 2354. If a patent preempted abstract ideas, it would "impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id.* (internal quotation marks and citation omitted).

### B. Standard of Proof

Under Section 282 of the Patent Act of 1952, "[a] patent shall be presumed valid" and "[t]he burden of establishing invalidity of a patent thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282(a). The Supreme Court has held that this section requires an invalidity defense to be proved by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). The parties dispute, however, whether Plaintiffs are entitled to a presumption of *eligibility* of their patents, that is, whether Defendants must prove by clear and convincing evidence that the patent is ineligible under Section 101.

There is no clear authority from the Supreme Court or the Federal Circuit on this question. In a concurrence in *Microsoft*, Justice Breyer, joined by two other Justices, wrote separately to opine that "the evidentiary standard of proof applies to questions of fact and not to questions of law," and that, therefore, the clear and convincing evidence standard should apply to factual disputes but not to disputes about legal questions such as the novelty or non-obviousness of an invention. *Id.* at 114 (Breyer, J., concurring). *See also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 720-21 (Mayer, J., concurring) (observing that no presumption of eligibility should attach to Section 101 inquiries because "[a]lthough the Supreme Court has taken up several section 101 cases in recent years, it has never mentioned—much less applied—any presumption of eligibility," making it reasonable to infer "that while a presumption of validity attaches in many contexts . . . , no equivalent presumption of eligibility applies in the section 101 calculus"). This Court agrees with the *Ultramercial* concurrence and further notes that the parties do not dispute that one of the patents in suit, the '535 patent, was approved before *Alice*, in October 2013. *See id.* at 420 ("Because the PTO has for many years applied an insufficiently rigorous subject matter eligibility standard, no presumption of eligibility should attach when

8

assessing whether claims meet the demands of section 101."). Plaintiffs cite only one case for the proposition that the clear and convincing evidence standard should apply, *MacroPoint, LLC v. FourKites, Inc.*, No. 1:15-cv-1002, 2015 WL 6870118, at *2 (N.D. Ohio Nov. 6, 2015), which is unpersuasive because there the court, in acknowledging that many courts have declined to apply the clear and convincing evidence standard after *Alice*, cited only to one Federal Circuit case, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014), that did not directly address which standard of proof applies. This Court, therefore, declines to follow the reasoning of the *MacroPoint* court and concludes that Defendants need not prove ineligibility by clear and convincing evidence but only a preponderance of the evidence.[1]

### C. Abstract Idea

Defendants contend that the patents in suit are directed to the abstract idea of sending alert notifications to multiple people. (Doc. 14-1 at 13.)

---

[1] The Court comes to its conclusion despite the fact that the '256 patent was approved after *Alice*. A few days after the *Alice* decision, the USPTO issued preliminary examination instructions to its patent examiners explaining how to apply the two-step test. (Doc. 34-4.) Defendants urge the Court to find that the USPTO did not employ the *Alice* framework when it approved the patent application, calling the Court's attention to the December 22, 2014 USPTO notification to Plaintiffs rejecting Claims 74-77 as directed to an abstract idea, which cites *Bilski v. Kappos*, 561 U.S. 593 (2010), but not *Alice*, in explaining why it rejected those four claims. (Doc. 34-3 at 4-5.) The Court may consider the USPTO's prosecution history of the patents in suit because the prosecution history is a public record and the Court is entitled to "consider materials in addition to the complaint if such materials are public records." *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). The rejection notice from the USPTO does not clearly reflect whether the USPTO analyzed the claims under the *Alice* standard, as it was brief and offered minimal explanation of its decision, but given that it was issued several months after *Alice*, and the Court must view the facts in the light most favorable to Plaintiffs on a Rule 12(c) motion, the Court will assume for purposes of this motion that the USPTO approved the '256 patent under the *Alice* standard. In light of the indirect Supreme Court guidance on this matter and a lack of other authority counseling otherwise, however, the fact that the '256 patent was issued after *Alice* does not change the Court's conclusion that the clear and convincing evidence standard does not apply.

9

The parties first dispute whether it is appropriate to use Claim 1 of the '535 patent as representative of all of the claims in suit.  There is no question that, as Defendants point out, a court may decide a motion for judgment on the pleadings based on its analysis of a single claim if that claim is representative of the others.  *See Content Extraction*, 776 F.3d at 1348; *Ultramercial*, 772 F.3d at 712.  Further, the Federal Circuit has held that a district court is not required to individually address claims not asserted or identified by the non-moving party if the court determines that certain claims are representative because they are "substantially similar and linked to the same abstract idea."  *Content Extraction*, 776 F.3d at 1348 (citation omitted).

Here, Defendants insist that claim 1 of the '535 patent is representative and, although Plaintiffs do not concede as much, they offer neither a different representative claim or claims nor an argument as to patent eligibility on each individual claim.  The Court, therefore, is not obligated to discuss each claim specifically but will include in its consideration of the two-step *Alice* test the claims that Plaintiffs have explicitly discussed in their response in opposition to Defendants' motion for judgment on the pleadings.

In *Alice*, the Supreme Court held that a patent's claims, which were "designed to facilitate the exchange of financial obligations between two parties by using a computer system as a third-party intermediary," were drawn to the abstract idea of intermediated settlement.  134 S. Ct. at 2352.  The Court characterized the concept of intermediated settlement as "a fundamental economic practice long prevalent in our system of commerce."  *Id.* at 2356 (quoting *Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (holding that the abstract concept of hedging, or protecting against risk, was a fundamental economic practice)).  The use of a third-party intermediary to reduce the settlement risk was, the Supreme Court said, a "building block of the modern economy" and thus an abstract idea.  *Id.*  In both *Alice* and *Bilski*, the Supreme Court

10

rejected the idea that an abstract idea was appropriately characterized as a "preexisting, fundamental truth." *Alice*, 134 S. Ct. at 2356 (citation omitted). Instead, a claim can be drawn to an abstract idea not only if it is a truth about the natural world "that has always existed," but also if "it is a method of organizing human activity." *Id.* (citation omitted).

The Federal Circuit has said that the first step of the *Alice* test entails "ascertaining the basic character of the subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed Cir. 2015). The Court's task is "to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental . . . practice long prevalent in our system . . . .'" *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed Cir. 2015) (quoting *Alice*, 134 S. Ct. at 2356).

Taking a broad view of the subject matter of the two patents, the Court finds that Plaintiffs' claims are drawn to the abstract idea of providing alert notifications to multiple persons. As is clear in the patent applications themselves, providing alert notifications to multiple persons was a common business activity before the '535 and '256 patents. (*See* '535 patent, Doc. 1-2 at 2:19-23 ("Many public and private entities currently receive this data stream, then parcel, process, categorize and sometimes enhance this information to rebroadcast over various distribution networks so local citizenry, populations and private industry may be alerted or informed.").) *See Context Extraction*, 776 F.3d at 1347 (holding that claims were drawn to an abstract idea of "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory").

Plaintiff posits that the "idea" of the '256 and '535 patents is "securely tethered to a tangible idea of passing messages into multiple messaging modes, and is not directed to an abstract idea, business concept, or financial instrument." (Doc. 26 at 23.) But the Federal

11

Circuit has said that "not every claim that recites concrete, tangible components escapes the reach of the abstract-idea inquiry."  *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed Cir. 2016).  *See also Alice*, 134 S. Ct. at 2360 (noting that claims reciting "specific hardware" such as a "data processing system" with a "communications controller" and "data storage unit" were directed to an abstract idea because the hardware was "purely functional and generic"); *Internet Patents*, 790 F.3d at 1344, 1348 (claims reciting the use of conventional web browser navigational functionalities without data loss in an online application consisting of dynamically generated web pages were drawn to the abstract idea of retaining information in the navigation of online forms).

Plaintiffs attempt to distinguish many of the post-*Alice* cases from the Federal Circuit and district courts by characterizing them as "business methods" cases, but courts have found many claims drawn to an abstract idea even if they involve technological concepts.  *See e.g.*, *TLI Commc'ns*, 823 F.3d at 611 ("While [the claim] requires concrete, tangible components such as 'a telephone unit' and a 'server,' the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner."); *Content Extraction*, 776 F.3d at 1345; *buySafe, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (using a computer to create a contract); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. 14-154, 2014 WL 4407592, at *6-7 (C.D. Cal. Sept. 4, 2014) (holding that claims directed to communications in connection with a computer-based notification system were directed to the abstract idea of "asking someone whether they want to perform a task, and if they do, waiting for them to complete it, and if they do not, asking someone else").

And although Plaintiffs charge that Defendants are overgeneralizing the claims and failing to take into account the specific components of the system such as the types of alerts and delivery mechanisms of the messages, the Federal Circuit has said that "the addition of merely novel or non-routine components to the claimed idea [does not] necessarily turn[] an abstraction into something concrete" as opposed to an abstract idea. *Ultramercial*, 772 F.3d at 715. Moreover, as the Federal Circuit said in *Ultramercial*, "[i]n any event, any novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis," to which the Court now turns. *Id.*; *see also Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, No. 2015-1763, 2016 WL 3514158, at *5 (Fed. Cir. June 27, 2016) ("[T]he claims and their specific limitations do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea. We therefore defer our consideration of the specific claim limitations' narrowing effect for step two.").

### D.  Inventive Concept

The second step of the *Alice* analysis requires the Court to "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355 (internal quotation marks and citation omitted).  An abstract idea cannot be transformed into a patent-eligible invention merely by "adding the words 'apply it,'" *Mayo*, 132 S. Ct. at 1294, or by limiting the use of the idea "to a particular technological environment," *Bilski*, 561 U.S. at 610-11.  The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358.

In *Alice*, the Supreme Court reiterated that computer implementation of a concept or algorithm "did not supply the necessary inventive concept" because the process could be "carried

13

out in existing computers long in use." *Id.* at 2357 (quoting *Benson*, 409 U.S. at 67); *see also Parker v. Flook*, 437 U.S. 584, 594 (1978); *Bilski*, 561 U.S. at 610-11 ("*Flook* stands for the proposition that the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment.") (internal quotation marks and citation omitted).

On the other hand, in *Diamond v. Diehr*, 450 U.S. 175, 178 (1981), the Supreme Court held that a computer-implemented process for curing rubber was patent-eligible because it used a well-known mathematical equation "in a process designed to solve a technological problem in 'conventional industry practice.'" *Alice*, 134 S. Ct. at 2358 (quoting *Diehr*, 450 U.S. at 178). Since *Alice*, the Federal Circuit has clarified in *Enfish, LLC v. Microsoft Corp.* that an "invention's ability to run on a general-purpose computer [does not] doom[] the claims" if they are "directed to an improvement in the functioning of a computer." 822 F.3d 1327, 1338 (Fed. Cir. 2016). The *Enfish* court distinguished between the claims in *Alice*, which could be construed as "simply adding conventional computer components to well-known business practices," and those in *Enfish*, where the Federal Circuit said its "conclusion that the claims are directed to an improvement of an existing technology is bolstered by the specification's teachings that the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1338, 1337.

Plaintiffs try to draw parallels between their claims and those presented in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed Cir. 2014). There, the Federal Circuit found claims to be patent-eligible that "specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *Id.* at 1258. The claims

"recite[d] an invention that is not merely the routine or conventional use of the Internet." *Id.* at 1259.  But unlike the patent in *DDR Holdings*, Plaintiffs' claims do not present a "claimed solution [that] is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." 773 F.3d at 1257.  Although Plaintiffs assert that the '256 and '535 patents are rooted in a specific problem of computer technology—namely, the incompatibility of messaging modes and the need to enable messaging in multiple modes—the claims recite nothing more than "well-understood, routine, [and] conventional activities previously known to the industry." *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1294) (alterations omitted).  *See also Content Extraction*, 776 F.3d at 1348 ("[The plaintiff's] claims merely recite the use of this existing scanning and processing technology to recognize and store data from specific data fields such as amounts, addresses, and dates."); *id.* at 1348-49 (holding that the plaintiff's argument "that certain dependent claims recite additional steps, such as extracting and detecting specific data fields, repeating some steps, and storing data as images or text" were insufficient to render the claims patent-eligible because they merely incorporated routine and conventional functions of scanners and computers); *Parus Holdings, Inc. v. Sallie Mae Bank*, 137 F. Supp. 3d 660, 674 (D. Del. 2015) ("At best, the claims describe using known technology (voice recognition, telephone or Internet) to enable the 'subscriber' to manage a network system made up of known communications components (e.g., telephone, fax, and answering machine) and computer components (e.g., servers and computers).").

  The claims here are more akin to those in *Intellectual Ventures*, where the Federal Circuit found that a patent claiming a method of tracking and storing information relating to customizing web page content was not an inventive concept.  792 F.3d at 1368.  In that case, the claims involved "a database, a user profile . . ., and a communication medium," which the court deemed

"all generic computer elements." *Id.* The claims were directed to a method of storing in a database a user's profile with categories to track their transactions and then sending transaction summary data for one or more of the user's selected categories over a communication medium to a receiving device. *Id.* at 1367. The court concluded that the claims' description of an "interactive interface" that tailored a webpage to a specific individual based on her profile did not transform the abstract idea into an inventive concept because it "simply describes a generic web server with attendant software, tasked with providing web pages to and communicating with the user's computer." *Id.* at 1370. Here, too, Plaintiffs have failed to specify non-generic computer elements or additional, non-routine steps that transform the patent into an inventive concept that "overcome[s] a problem specifically arising in the realm of computer networks." *DDR Holdings*, 773 F.3d at 1257.

Nor does Plaintiffs' reliance on a recent district court decision, *Messaging Gateway Solutions, LLC v. Amdocs, Inc.*, Nos. 14-732/733/734/735/736/737, 2015 WL 1744343 (D. Del. Apr. 15, 2015), save their case. There, the court found that the representative claim was drawn to the abstract idea of translation but that it contained an inventive concept sufficient to render it patent-eligible, namely, that it "specifies how an interaction between a mobile phone and a computer is manipulated in order to achieve a desired result which overrides conventional practice," because it created a new method that allowed phones to send SMS text messages to computers. *Id.* at *5. Further, the court found that the inventive concept was "firmly rooted in technology and [was] addressed to a specific problem arising in the realm of mobile device-to-Internet communication." *Id.* at *6. But *Messaging Gateway Solutions* is inapposite here because the '535 and '256 patents do not provide a solution for a problem created by new technology. *See id.* at *5 ("The solution it provides is tethered to the technology that created the

16

problem" unique to "text-message communication between a mobile device and a computer."). Instead, as Plaintiffs concede in their opposition brief, the patents in suit implement "additional technological features and functions . . . using existing standards and technology already utilized in the industry." (Doc. 26 at 28.)

Plaintiffs also contend that there are specific limitations recited in the claims that transform it into an inventive concept. (*Id.* at 23.) In particular, they cite claims reciting limitations to the types of alert origination, threat identification, and messages, as well as the criteria used in forwarding messages and selecting recipients. (*Id.* at 30.) Collecting data from multiple data sources, all of which have previously been used in alert notifications, is not an inventive concept. *See Data Distrib. Tech., LLC v. BRER Affiliates, Inc.*, No. 12-4878, 2014 WL 4162765, at *15 (D.N.J. Aug. 19, 2014) ("[The] patent is directed to an abstract idea of maintaining a database and updating users about new information . . . and . . . Plaintiff cannot satisfy part two of the *Alice* test by merely . . . limiting its application. . . [and] emphasizing the speed and efficiency of the system."). Further, other courts have found that customizing content in the manner Plaintiffs describe is not patentable. *See Intellectual Ventures*, 792 F.3d at 1369-70; *Kroy IP Holdings, LLC v. Safeway, Inc.*, 107 F. Supp. 3d 677, 693 (E.D. Tex. 2015) ("[T]he basic functions recited in the '830 patent—selecting awards based on consumers' demographic and psychographic preferences, ensuring that those awards are available in inventory, and directing the consumers to a particular location to redeem their awards—all constitute conventional conduct that could be performed by a human being. The greater efficiency with which the computer can perform tasks that a human could perform does not render the inventions patentable."). And in *Ultramercial*, the Federal Circuit found that claims of sending a message to an end user, receiving the end user's response to the message, increasing the end user's access

to content on a network based on that response, and updating the transaction event to an activity log lacked an inventive conceptive because they were "insignificant 'data-gathering steps,'" even if some of the steps had not been previously employed in the particular method.  772 F.3d at 712, 716 (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011)).  The Court concludes that the limitations Plaintiffs recite are insufficient to transform the abstract idea into an inventive concept.

Because the claims of the '256 and '535 patents are directed to an abstract idea and lacking an inventive concept, they are patent-ineligible under 35 U.S.C. § 101.  Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

Plaintiffs have also moved for judgment on the pleadings that the claims of the '256 and '535 patents are valid under 35 U.S.C. § 101.  Since the Court finds that the patents in suit are patent-ineligible under *Alice*, Plaintiffs' Motion for Judgment on the Pleadings in **DENIED** and Plaintiffs' Motion to Strike Defendants' Unclean Hands and Equitable Estoppel Defenses is **DENIED AS MOOT**.

## IV.    CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings is **GRANTED** (Doc. 14); Plaintiffs' Motion for Judgment on the Pleadings is **DENIED** (Doc. 25); and Plaintiffs' Motion to Strike Defendants' Unclean Hands and Equitable Estoppel Defenses is **DENIED AS MOOT**.  (Doc. 20.)  This case is **DISMISSED**.  The Clerk is directed to enter Judgment for Defendants.

**IT IS SO ORDERED.**

    s/ Algenon L. Marbley
ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

**DATED:  August 2, 2016**